UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MARTAOUSE C. HOLLOWAY,

        Plaintiff,

        v.                                            Case No. 23-cv-1414-bhl

RACHEL M. MATUSHAK, et al.,

        Defendants.

---

## DECISION AND ORDER

---

    Plaintiff Martaouse Holloway is incarcerated at the Green Bay Correctional Institution (GBCI) and representing himself in this 42 U.S.C. §1983 action. He is proceeding on Eighth Amendment claims based on allegations that Defendants demonstrated deliberate indifference to his arm injury when they failed to timely deliver his arm brace. On September 23, 2024, Defendants filed a summary judgment motion. Holloway later filed his own untimely summary judgment motion on December 26, 2024, more than three months after the dispositive motion deadline had expired. The Court will deny Holloway's motion because it is untimely. And, for the reasons explained below, the Court will grant Defendants' motion and dismiss this action.

## BACKGROUND

    At the relevant time, Holloway was incarcerated at GBCI, where Defendant Randy Fisher worked as the restricted housing unit property correctional officer and Defendant Rachel Matushak worked as a nurse. According to Holloway, on May 11, 2023, he fell while playing basketball and injured his arm. Neither party provided medical records from the time of the injury, but it appears from GBCI's investigation into Holloway's grievance that the health services unit issued an arm

brace on May 19, 2023, with an end date for use of the brace on August 17, 2023. Dkt. No. 19 at ¶¶1-5; Dkt. No. 25-1 at 5.

On June 19, 2023, Holloway was transferred from general population to temporary lockup. Per policy, Holloway's property was to be packed up and inventoried because the property allowances are stricter in temporary lockup, which is in the restricted housing unit. Property that Holloway could not have in temporary lockup would be placed in storage until he returned to general population. On June 23, 2023, Holloway submitted a health services request asking for his arm brace. He stated that he had "rebroke" his right arm on June 21, 2023, but "they" still would not give him his brace. Nurse Matushak responded that she had spoken to Fisher and that he was looking for the brace. Fisher asserts that he does not remember being asked to look for Holloway's arm brace, but if he had, he would have looked for it as soon as he could, and if he had found it, he would have given it to the health services unit. Fisher asserts that he does not remember ever finding Holloway's arm brace. Dkt. No. 19 at ¶¶8, 33-35; Dkt. No. 25-1 at 3.

Correctional Officer Cortez (who is not a Defendant) handles most of the pack-ups for inmates who are transferred to temporary lockup. Cortez packed up and inventoried Holloway's property on June 30, 2023, eleven days after Holloway's transfer. Defendants assert that, on June 19, 2023, 38 inmates were placed in temporary lockup, and between June 19 and June 30, 2023, 475 inmates were placed in temporary lockup. Defendants do not explain if this is a larger-than-normal number of transfers, nor do they explain whether an eleven-day delay in inventorying an inmate's property is typical. Holloway asserts that he generally gets his property within a few days of being transferred to temporary lockup. Dkt. No. 19 at ¶¶7-11; Dkt. No. 1 at ¶14.

Once Cortez completes a property inventory, she provides it to Fisher who then delivers the allowable property to the inmate. As noted, Fisher received Holloway's property inventory on

2

Friday, June 30, 2023. Fisher did not deliver Holloway's property that day, and Fisher does not work on the weekends, including July 1 or 2, 2023. Fisher took vacation days on July 3 and 4, 2023. On July 5, 2023, when Fisher returned to work, he was reassigned to a different unit for the day. Accordingly, Fisher could not have delivered Holloway's property from July 1 through July 5, 2023. On July 6, 2023, Fisher returned to his normal duties, and he provided Holloway with his property. The arm brace was not included in the property Fisher delivered to Holloway because the inventory completed by Cortez did not indicate Holloway had an arm brace. Holloway insists the arm brace was hanging from the wall above his bed at the time he was moved to temporary lockup, so it should have been inventoried by Cortez. It is not known what happened to Holloway's brace. Dkt. No. 19 at ¶¶12, 25-27; Dkt. No. 25 at ¶13.

On July 3, 2024, a few days before Fisher delivered Holloway's property, Holloway was transported offsite for a follow-up appointment with an orthopedic physician's assistant for evaluation of his arm. He noted that Holloway had initially managed in an "Exos fracture brace" and had been transitioned to a "volar wrist splint" at the last appointment to address complaints of wrist pain. He further noted that the last radiographs showed good position of the fracture and no acute abnormalities in Holloway's wrist. X-rays of Holloway's elbow suggested "progressive healing with stable alignment. No new osseous deformity of dislocation. Small radius fractur show[ed] increasing healing." Holloway reported to the physician's assistant that he had reinjured his arm when he rolled over on it while sleeping and that his wrist had been painful since then. The physician's assistant observed no abnormalities in the forearm, wrist, or hand, and Holloway could move his wrist and hand without significant pain. The physician's assistant recommended Holloway use a wrist brace for comfort. Dkt. No. 19 at ¶16.

3

That same day, a doctor at the prison prescribed a right wrist brace consistent with the physician assistant's recommendation. Holloway received the brace shortly thereafter. According to Holloway, Nurse Matushak, whom he knows from years of interactions, provided him with the prescribed brace, but Nurse Matushak, relying on medical records, asserts that another nurse gave the brace to Holloway and that she did not interact with him about the brace. According to Holloway, he informed Nurse Matushak that she had given him the wrong brace because he needed a full-arm brace, not a wrist brace. Holloway asserts that Nurse Matushak told him, "This gotta do for now." Two days later, on July 5, 2023, a doctor at the prison placed an order for Holloway to receive a longer, better wrist splint, if possible. Holloway received the longer brace a couple of days later. Dkt. No. 19 at ¶¶16-21; Dkt. No. 20-3 at 2.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an

4

element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Holloway asserts that Fisher and Nurse Matushak violated his rights under the Eighth Amendment because they failed to timely deliver an arm brace that he had been prescribed for an arm injury. To prevail on a deliberate indifference claim under the Eighth Amendment, a plaintiff must prove that prison officials intentionally disregarded a known, objectively serious medical condition that posed an excessive risk to the plaintiff's health. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citations omitted). Although the two-week delay that Holloway experienced in receiving a brace was understandably frustrating, based on the record, no jury could reasonably conclude that Fisher or Nurse Matushak intentionally disregarded a known, objectively serious medical condition that posed an excessive risk to Holloway's health.

Nurse Matushak's response to Holloway's health services request form indicates that she promptly forwarded his inquiry about the missing brace to Fisher. Nurse Matushak was not responsible for sorting or delivering property, so her decision to forward the request to the responsible officer demonstrates her concern for (not deliberate indifference to) Holloway's needs. Given the number of inmates transferring from general population to temporary lockup, it is understandable that Fisher does not recall this routine request from more than a year ago. However, Fisher explains that his practice is to look for a requested item as he is able and, if the item is found, to give it to health services for delivery. It is unclear whether Fisher found the brace or even if he had the opportunity to look for it, but Holloway has offered no evidence suggesting that Fisher should have known that his failure to locate the brace would pose a substantial risk to Holloway's health. Indeed, the orthopedic specialist indicated that Holloway's injury showed

5

good signs of healing and that a wrist brace (not an arm brace) was needed only for comfort. Again, it is unfortunate that Fisher was not able to locate the brace immediately after Holloway's transfer, but his failure to do so or to appreciate the significance of not doing so was negligent at most, which is not actionable under the Constitution. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976) ("An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain.").

Nor could a jury reasonably conclude that Nurse Matushak was deliberately indifferent to Holloway's arm injury when she provided him with a wrist brace as prescribed by the orthopedic specialist and the prison doctor. Holloway informed her that he wanted a longer brace for his whole arm, but inmates are not entitled to their preferred treatments, only adequate care. *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Nurse Matushak's compliance with the orders of two treating providers does not demonstrate deliberate indifference, particularly because Holloway presents no evidence to suggest that she had a reason to question the adequacy of the care they prescribed. *See Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021). And, in any event, it appears that Holloway received a longer brace as he desired a couple days later. For all these reasons, no jury could reasonably conclude Defendants were deliberately indifferent to Holloway's arm injury, so Defendants are entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Defendants' summary judgment motion (Dkt. No. 17) is **GRANTED,** Holloway's summary judgment motion (Dkt. No. 31) is **DENIED** as untimely, and this action is **DISMISSED**. The Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin on January 2, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.